Argued April 23, modified to terminate alimony;
affirmed in all other respects, August 20,
reconsideration denied September 25,
petition for review denied November 27, 1979

WARD,

*Appellant - Cross-respondent,*

*v.*

WARD,

*Respondent - Cross-appellant.*

(No. 343-526, CA 11052)

599 P2d 1150

John E. Johansen, Jr., Portland, argued the cause and filed the brief for appellant - cross-respondent.

[448]

H. Jay Folberg, Lake Oswego, argued the cause and filed the brief for respondent - cross-appellant.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

The 15-year marriage of the parties ended in divorce in 1969. For convenience, we refer to them as husband and wife. Custody of their three children and $300 monthly child support was awarded to the wife. The decree also awarded her alimony, as it was then called, as follows:

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff shall have judgment and recover from the defendant, by way of alimony and for the support and maintenance of plaintiff, the monthly sum of $425.00. Said payments may be changed pursuant to the property settlement agreement on file herein. * * *"
> "* * * * *
> "The parties hereto have entered into and filed herein a property settlement agreement, all of the terms of which have been examined by the court; all parts of said agreement, except those parts thereof which are inconsistent with any other portion of this decree, hereby are approved and ratified and the terms thereof hereby are incorporated herein as part hereof, except as hereinabove provided."

The property settlement agreement provided for alimony of $425 per month. It further provided that alimony payments "will be reduced" or "shall be raised" according to a formula based upon reduction or increase of husband's annual gross income and it established minimum and maximum amounts payable under that schedule.

This proceeding commenced on husband's motion to modify the decree by terminating or reducing alimony. Wife then moved to enter judgment for arrearages due under the sliding scale. The trial court denied the wife's motion regarding arrearages and allowed husband's motion by ordering alimony reduced over eight months to a level of $25 per month. Wife appeals both portions of the order and the husband cross-appeals asserting that alimony should be eliminated entirely.

[449]

## I. Arrearages

■ Husband has made payments of more than $425 per month but less than the amount payable under the sliding scale of the property settlement agreement. The trial court reasoned that the decree provided for monthly payments of $425, but did not incorporate the sliding scale of the property settlement agreement. Rather, the decree provided only that the payments "may be changed pursuant to the property settlement agreement" and that no such change had been made. The decree is consistent in this respect with the policy enunciated in *Picker v. Vollenhover,* 206 Or 45, 72, 290 P2d 789 (1955), that the decree should provide for an appropriate order based upon existing circumstances and not provide for automatic future changes based upon change of a single circumstance, such changes being better handled by subsequent motions for modification. The trial court's reasoning was correct and we uphold it.

## II. Reduction of Alimony

Since the 1969 decree, three things which are relevant to continuation of alimony have occurred. First, the children no longer live with their mother. The parties acknowledge that much of the alimony payment was initially regarded as child support but was designated alimony for the purpose of gaining a tax advantage. No specific amount was designated as intended in lieu of child support, but the change of circumstance regarding the need and responsibility for child support augurs for a reduction of alimony.

Second, wife's fiscal situation has improved and stabilized. She lives in the encumbered house awarded her by the decree and she has accumulated some assets. In 1953 she received a bachelor of science degree in home economics, but did not work outside the house until the divorce. At the time of the decree she had been employed for eight months as a child care aid at a gross salary of approximately $450 per month. Since then she has been employed full time and

[450]

received a master of education degree qualifying her for employment as a learning disability specialist. She is now employed by a school district at a gross annual salary of $14,840.

Third, husband's situation has changed. He has remarried and has a five-year-old child. His salary has fluctuated from $31,000 in 1969 to a high of $60,000 in 1975. In 1977 his salary was over $51,000. He has also at various times received substantial gains from the sale of property.

Modification of alimony awards pursuant to change of circumstances should be governed by the same legal principles and judicial objectives as the award itself. The primary effect to be accomplished by a divorce or dissolution is the separation of the parties in a manner that enables each to continue his or her life as free as possible from entanglement with the other. *Slauson and Slauson,* 29 Or App 177, 562 P2d 604 (1977). Alimony or spousal support must be considered together with the other financial provisions of the decree. *Grove and Grove,* 280 Or 341, 344, 571 P2d 477, 280 Or 769, 572 P2d 1320 (1977). Particularly in a marriage of long duration where a spouse may be inferred to have foregone opportunity for occupational development, the primary objective of alimony, if circumstances permit, should be the achievement of financial self-sufficiency by the supported spouse and the eventual termination of dependency upon the other spouse. As the Supreme Court said in *Grove and Grove:*

> "What the courts must attempt, then, is to award spousal support, if it is appropriate, on terms that are equitable between the parties that take into account need and ability to pay and that further the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.
> "* * * * *
> "It is proper and desirable * * * where the circumstances permit, to tailor the financial provisions of a dissolution decree in a way which will

provide the wife an opportunity to increase her earning capacity and thus to eliminate the need for permanent support or to reduce the amount required. * * *" 280 Or at 353.

■ The Supreme Court in *Grove and Grove* spoke of "self-support at a reasonable level," but neither the Supreme Court nor we have had occasion to refine what that term means. In *Kitson v. Kitson,* 17 Or App 648, 655, 523 P2d 575 *rev den* (1974) (quoted with approval in *Grove and Grove,* 280 Or at 347) we expressed the concept in terms of the supported spouse being

" '* * * employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. * * * [I]t is not the policy of the law to give the wife an annuity for life or, stated differently, a perpetual lien against her former husband's future income. Conversely, if the wife is not employable or only employable at a low income compared to her standard of living during marriage then, generally speaking, permanent support is appropriate.' *Kitson and Kitson,* 17 Or App 648, 655-56, 523 P2d 575, rev. denied (1974)."

Of course, the appropriate level of alimony support is based on the standard of living enjoyed during the marriage, not upon the subsequent improvement in the fortunes of the obligated spouse. *Feves v. Feves,* 198 Or 151, 254 P2d 694 (1953).

■ Here, wife, with financial assistance from husband and a high degree of personal determination and self-application, has achieved professional competence which reasonably assures her of continuing employment. Her salary is sufficient to provide a reasonable standard of living. It is not sufficient to provide the same standard of living which husband's salary could have provided during the course of the marriage but, on the other hand, her husband is not a life-long guarantor of a higher standard of living. Considering the duration of the marriage and the post-divorce duration of alimony support, it is now both possible

[452]

and timely to terminate wife's dependency and husband's obligation of support.

To terminate alimony because wife has achieved self-sufficiency might be regarded as punishing her for doing what the law has encouraged her to do. This is not so, however, in light of the policies expressed in ORS 107.105(1)(c), which allow termination of support where the supported spouse has not made reasonable efforts to achieve self-sufficiency. Wife in this case has had the opportunity to become independent, has made reasonable efforts to do so, and has been successful. The termination of support leaves her able to care for herself whereas a person who had not made such efforts would be left in much poorer circumstances. We agree with the trial court that it is time to terminate alimony.

On cross-appeal husband urges us to terminate alimony altogether. The trial court continued alimony at $25 per month in order to maintain husband's "exposure" to alimony liability. That notion rests on the proposition stated in *Johnson v. Johnson,* 245 Or 10, 419 P2d 28 (1966), that if a divorce decree does not provide for alimony, *i.e.,* continuation of the spousal obligation of support, then the decree cannot later be modified to provide for alimony. To do so, the Supreme Court held, would be to amend the decree rather than to modify it.

The trial court concluded, as do we, that alimony should be terminated due to changed circumstances. The retention of a token alimony obligation in order to continue the liability for alimony in the event that the recipient becomes needy in the future is factually speculative and procedurally fictitious. We hold that modification of alimony or spousal support provisions should be based on the conditions which are cognizable at the time of the modification hearing.

This case differs from *Johnson* in that this decree orders alimony. Whether entitlement to and liability

for alimony survives the modification of a preexisting order to zero depends upon whether the Supreme Court someday holds that the rule in *Johnson* does not apply to termination by modification or whether it extends the principles of self-dependence and disentanglement which it expressed in *Grove and Grove* to modifications. For us to reach the issue in this case would be speculative. We hold only that token alimony payments, unwarranted by the circumstances, should not be required. Accordingly, we vacate the order continuing alimony at $25 per month.

Modified to terminate alimony; affirmed in all other respects. Costs to neither party.