Argued and submitted November 17, 1980, judgment of contempt reversed, order
terminating spousal support reversed February 17, 1981

**SWITZER,**
*Respondent,*
*v.*
**SWITZER,**
*Appellant.*

**STATE ex rel SWITZER,**
*Respondent,*
*v.*
**SWITZER,**
*Appellant.*

(No. 272-804, CA   17727)

623 P2d 1142

Dianne Sawyer, Deputy District Attorney, Portland, argued the cause for appellant-respondent. With her on the briefs were Harl Haas, District Attorney for Multnomah County, and Harold J. Blank, Chief Deputy Domestic Relations, Portland.

Daniel J. Van Dyke, Woodburn, argued the cause for respondent-appellant. With him on the briefs was Peterson & Van Dyke, Woodburn.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

This case involves appeals concerning two separate but related orders. Husband appeals from a judgment of contempt for failure to obey an order for support payments; wife appeals from an order modifying the dissolution decree by terminating her $100 per month spousal support. We deal with the husband's appeal first. It presents a single issue, which may be alternatively phrased: whether the trial court erred in applying the "first in, first out" rule to husband's child support payments;[1] or whether judgments on account of child support arrearages payable on behalf of the eldest son lapsed in 1977, 10 years after the last payment was due.[2]

After a 16-year marriage, husband and wife were divorced on November 20, 1962. Wife was awarded custody of the parties' three sons, whose ages at the time of dissolution were 4, 14 and 16. The decree provided for husband to pay $50 per month as support for each child and $100 per month spousal support.

In October, 1963, the eldest son left wife's home and went to live with husband. After a brief period of time with husband, he joined the military service. Following his military service of approximately a year, the evidence is conflicting whether and to what extent he resumed living with wife; but in any event in 1967, that child became 21, and husband's support obligation on his account terminated.

When the eldest son left wife's residence in 1963, husband ceased making child support payments for him. He continued to make $50 monthly payments for the other children and the $100 monthly spousal support payment to

---

[1] *See Keene v. Keene,* 23 Or App 688, 543 P2d 693 (1975).

[2] ORS 18.360 provides:

"Whenever, after the entry of a judgment, a period of 10 years shall elapse, the judgment and the lien thereof shall expire. However, before the expiration of 10 years the circuit court in which such judgment was docketed, on motion, may renew such judgment and cause a new entry of the same to be made in the judgment docket, after which entry the lien of the judgment shall continue for another 10 years unless sooner satisfied, and after which entry execution may issue upon such judgment for another 10 years."

wife. Both husband and wife understood that the monies being paid by husband were child support for the two younger children and spousal support for wife, and not support for the eldest son. At the hearing, wife testified as follows:

"THE COURT: After the [eldest son] went into the service and came back and started to live with you, did he continue to pay child support for you and for the other kids?

"WIFE: Yes, he did.

"THE COURT: Not for [the eldest son]?

"WIFE: No."

The parties' position is further clarified by the following questioning by the court:

"THE COURT: So [counsel for husband] is going to say that the evidence indicates that the statutory time has run because there was obviously time during which the intent on the part of your ex-husband was not to pay for [the eldest son]?

"WIFE: That's right.

"THE COURT: That was communicated to you so you had no right to apply the payments that he made to the obligation for [the eldest son] when you knew he was refusing to pay for [the eldest son], and the sums were paid by him and received by you with the—with both of you understanding he was not willing to pay for [the eldest son]?

"WIFE: Right."

In 1972, when he was purchasing a house, husband became aware of judgments based on arrearages accrued for child support for 1963-1967 for the eldest son. At that time wife executed a release of her judgment lien to enable husband to conclude the purchase. The release specifically identifies the judgments as being "for support payments of [the eldest son]."

In 1979, contempt proceedings against husband were initiated. The trial court found husband in contempt for his failure to perform his support obligations and concluded that the "first in, first out" rule applied:

"Under *[Keene v. Keene]* the first in first out rule does apply, but in this case it doesn't apply because the parties define the basis upon which he paid and which she received

as indicating that the first in first out rule doesn't apply to [the eldest son], however, except when the release was given in 1972, the judgment lien, she was invoking and restating her assertion that the first in and first out rule does apply because that notified him she was not releasing him from the claim.

"So that up until his receiving from her the release of the judgment lien, he had a good *[Keene v. Keene]* case, which affirms the statute of limitations, but when he got the release of the judgment lien he destroyed his right to claim that [the eldest son] was not an obligation because she was asserting that he was continuing as an obligation of her ex-husband."

Husband claims that the trial court erred in applying *Keene,* and that because the judgments against him accrued no later than 1967, wife is barred from enforcing the judgments in 1979 by reason of the statute of limitations. Wife maintains that the release of judgment lien in 1972 manifested her intention to pursue the delinquent support which had accrued and that at that time the "first in, first out" rule became applicable.

In *Keene,* the "first in, first out" rule originally expressed in *Fowler v. Courtemanche,* 202 Or 413, 274 P2d 258 (1954), was made applicable to support obligations in domestic relations cases. It provides that

"*** where neither debtor nor creditor seasonably exercises his power to apply a payment to one of several debts, the payment is applied to the earliest matured debt to which the creditor might have applied it." *Keene v. Keene, supra* n 1 at 690.

*Keene* reiterates the *Fowler* holding that the "first in, first out" rule is applicable unless the parties otherwise manifest their intentions respecting the application of payments.[3]

[3] In *Keene,* the court declined to apply the "first in, first out" rule. The parties had entered into a stipulation reciting the amount of arrearages and the manner in which payments by husband would be credited to his account. The court noted that

"[b]oth she and husband 'manifested' an intention not only of what the judgment then was, but also how future payments should be credited, for they agreed that $100 of each current payment should be applied to current instalments coming due, and $30 should go on arrearages, that is, the $3,800 judgment." 23 Or App at 691.

However, the record was insufficient for the court to determine the parties' compliance with the agreement.

The parties' intent to apply the payments to specific obligations is clearly manifested in this case. The evidence is that when the eldest son left wife's residence, husband ceased making child support payments on that son's account but continued to make the payments for the other two children and spousal support for wife. Both parties treated the payments as applying to those currently existing obligations. There is no evidence that the payments by husband after the 1972 release of judgment lien were to be applied in a different manner, or that the parties' intent had in any way changed.

■ ■    The trial court apparently viewed the release as a reassertion of wife's claim against husband, thereby triggering application of the "first in, first out" rule. Wife claims that, while the release concededly is not sufficient to renew her judgments under ORS 18.360, it clearly stated her desire to pursue the judgment. However, the only effect of the release was that wife released the judgment *lien* which would have attached to the property husband was purchasing. The release had no effect on the underlying judgment, nor did it change the previous arrangement established by the parties. Therefore, the trial court improperly applied the "first in, first out" rule. Because the judgments accrued no later than 1967, a period of over 10 years has expired and wife was barred from recovery. ORS 18.360.

Turning to wife's appeal, the proceeding was initiated by husband's petition to eliminate the spousal support provision of the decree. At the hearing husband indicated that ORS 107.407 was "basically the basis of [his] motion." That statute provides:

"If an individual has paid an amount of money in instalments for more than 10 years for the support of a former spouse under a court decree of annulment or dissolution of marriage that ordered such payment, and when the former spouse has not made a reasonable effort during that period of time to become financially self-supporting and independent of the support provided under the decree, the individual paying the support may petition the court that issued the decree to set aside so much of the decree as may provide for the support of the former spouse."

He claims that wife has failed to advance herself in employment opportunities and education for a period of 10 years, and so elimination of spousal support is proper. He relies primarily on *Hanlin v. Hanlin,* 42 Or App 165, 600 P2d 454 *rev den* 288 Or 81 (1979); and *McGee v. McGee,* 48 Or App 163, 616 P2d 555 (1980).

In *Hanlin v. Hanlin, supra* at 167-168, we stated:

"In *Grove and Grove,* 280 Or 341, 353, 571 P2d 477 (1977), the court, in discussing the principles to be applied in determining the amount and duration of spousal support, noted the legislature had amended the marriage dissolution statutes in certain particulars since entry of the decree in that case. The court stated these amendments, which became effective after entry of the decree, were not directly applicable. However, the court said that they reflected existing policy and were therefore relevant in determining the questions being considered by the court.

"ORS 107.407 falls into that category. Although the statute is not directly applicable to this decree it is an elaboration of existing policy that we explained in *Kitson and Kitson,* 17 Or App 648, 523 P2d 575 *rev den* (1974), decided prior to enactment of ORS 107.407.

"In *Kitson* we rejected the idea that one spouse is the ward of the other following a dissolution of marriage and said it is not the policy of the law to give the wife a perpetual lien against her former husband's future income. This policy implies an obligation on the dependent spouse to make a reasonable effort to achieve economic independence of spousal support. In deciding whether a decree should be modified to reduce or terminate spousal support the court should consider the goal of ending the support-dependency relationship within a reasonable time where it would be just and equitable to do so. *See Grove and Grove, supra.* "

Following the divorce in 1962, wife was given custody of the parties' three minor sons. Two of the children lived with wife past their age of majority; the youngest child left the wife's residence in 1978 at the age of 19. Wife was 38 years old at the time of the decree. She had not worked outside the home during the marriage and had had no job training. At the time of the entry of the decree she took a job as an elevator operator and has worked at that

job full-time for 18 years. She testified to a gross income of $9,785 in 1979.

■       Unlike the spouses in the *McGee* and *Hanlin* cases relied on by husband for termination of support, wife has been employed full-time since the divorce. For most of that time, children were living with her. In *Hanlin,* the dependent spouse had worked only sporadically and never at a job of long duration. In *McGee* the wife had been living on income received from the decree and had made little effort in the 19 years since the divorce to supplement her income by employment.

Under the circumstances of this case, we believe that wife has made "reasonable effort" to be financially self-supporting. It follows that spousal support was improperly terminated.

Judgment of contempt reversed; order terminating spousal support reversed; no costs.